# Exhibit E

DEPOSITION OF OFFICER JASON GILLETT

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

--o0o--

AG.G. a minor, by and through  )
his guardian ad litem, JESSICA )
AQUINO; AR.G., a minor, by and )
through his guardian ad litem, )
JESSICA AQUINO; KARLA GONSALEZ )
individually; and AUGUSTIN     )
GONSALEZ, JR., individually,   )
                               )
            Plaintiffs,        )
                               )
      vs.                      ) CASE NO.: 4:19-cv-00697 DMR
                               )
CITY OF HAYWARD, a municipal   )
corporation; MARK KOLLER,      )
individually; PHILLIP WOOLEY,  )
individually; MICHAEL CLARK,   )
individually; TASHA DECOSTA,   )
individually; and DOES 1-100,  )
inclusive,                     )
                               )
            Defendants.        )
_____)      CERTIFIED COPY

DEPOSITION OF OFFICER JASON GILLETT

THURSDAY, JANUARY 30, 2020

REPORTED BY:  KELLY L. MCKISSACK, CSR #13430

1

1   you're approaching -- in the report you say, "As I was
2   approaching O'Neil Avenue from Orchard Avenue officers
3   on scene broadcast via the radio shots fired."
4               How far away do you think you were from their
5   location when you, let me finish, when you heard the
6   report of shots fired?
7        A.    I don't know exact distance.  I would say if I
8   had to approximate maybe 3- or 400 yards.
9        Q.    Okay.  So you would have arrived and parked
10  your car very quickly afterwards, correct?
11       A.    Yes.
12       Q.    And were you responding lights and siren?
13       A.    Yes.
14       Q.    Okay.  One second.  And what did you see once
15  you parked your vehicle?
16       A.    I saw two patrol cars off to the side of each
17  other.  And I got out.  I ran towards what I know now
18  Officer Wooley's patrol vehicle and saw him standing in
19  front on the driver side.
20       Q.    What was he doing?
21       A.    He had his weapon pointed in a downward angle.
22       Q.    Okay.  Can you describe Officer Wooley's
23  demeanor at that time?
24       A.    I wasn't -- no.
25       Q.    Was there anything about his demeanor that

12

**BARBARA J. BUTLER & ASSOCIATES - Certified Court Reporters**
1659 Scott Blvd., Suite 15, Santa Clara, CA 95050 - (510) 83-BUTLER (28853) or (408) 248-BUTLER (2885)

1  jumped out at you or that caught your attention?
2       A.   No.  I know there had just been a shooting.  I
3  didn't know at the time who had shot or anything.  So
4  nothing stood out to me.
5       Q.   Did Officer Wooley say anything to you?
6       A.   No.
7       Q.   Did you hear Officer Wooley saying anything?
8       A.   No, not that I recall.
9       Q.   Okay.  And at some point you saw Mr. Gonsalez
10 on the ground, correct?
11      A.   Yeah.  As I broke the front of the patrol
12 vehicle I saw the subject on the ground.  And I believe
13 Officer Clark attempting to detain him at which time I
14 assisted.
15      Q.   And at that time was there a -- did you see a
16 weapon anywhere?
17      A.   When I -- I believe I grabbed his left arm.
18 We pulled him to detain him; I saw a razor blade on the
19 ground.
20      Q.   Was the razor blade -- from watching -- you've
21 watched the video, correct?
22      A.   Yes.
23           MR. VIGILIA:  Objection.  Vague as to the
24 video.
25           MR. NISENBAUM:  Sure.

13

1    Q.   You're aware that there are video camera, body
2    cam videos of the incident, correct?
3    A.   Yes.
4    Q.   And there are body cam videos of events that
5    occurred after the incident, correct?
6    A.   Yes.
7    Q.   And based on your watching the video, you're
8    aware that those videos document the recovery of the
9    razor blade, correct?
10   A.   Yes.
11   Q.   Okay.  Including you turning Mr. Gonsalez'
12   body, I guess, rolling it kind of towards you?
13   A.   Yes.
14   Q.   Then seeing the razor blade, correct?
15   A.   Yes.
16   Q.   Was it actually under his body before, in
17   other words -- let me finish the question.
18   A.   Sorry.
19   Q.   It was a bad question.  Strike that.
20        Based on recovering -- your recovery of the
21   razor blade, had it be under his body before you
22   recovered it?
23        MR. VIGILIA:  Objection.  Calls --
24   BY MR. NISENBAUM:  Q.   Before you rolled him.
25        MR. VIGILIA:  Objection.  Calls for

14

```
 1    speculation.  You can answer.
 2              THE WITNESS:  I don't know because he was
 3    already being detained at the time.  It was near where
 4    he was laying for sure.
 5    BY MR. NISENBAUM:  Q.  And who was that officer, Davis?
 6         A.   The other officer detaining him?
 7         Q.   Yeah.
 8         A.   I thought it was Officer Clark.
 9         Q.   Clark. Okay. Right.  I'm going to show you a
10    picture, several pictures rather.  We'll make these the
11    next in order.  It's a set of three pictures.
12              (Whereupon, Exhibit B was marked for
13              identification.)
14    BY MR. NISENBAUM:  Q.  Have you seen these pictures
15    before?  Take a look through them.
16         A.   I have not.
17         Q.   Let me ask you this.  Do you recognize what's
18    depicted in the pictures?
19         A.   I do, yes.
20         Q.   What is depicted?
21         A.   A yellow card, which is one of our report
22    receipts we give out after reports.  A razor blade and a
23    marking of where the razor blade was.
24         Q.   And so the razor blade -- was the razor blade
25    recovered where it's demonstrated next to the orange
```

15

```
 1   his breath, like he was out of breath?
 2        A.   Yes.
 3        Q.   Were his eyes open or closed?
 4        A.   They were open.
 5        Q.   Were his eyes -- could you tell were his eyes
 6   moving or were they fixed?
 7        A.   I don't recall.
 8        Q.   How long did you attend to Mr. Gonsalez?
 9        A.   Roughly five minutes.
10        Q.   And did his condition, his medical condition,
11   appear to change while you were attending to him?
12             MR. VIGILIA:  Objection.  Calls for expert
13   opinion.  You can answer if you can.
14             THE WITNESS:  It appeared that he was
15   struggling more and more to breathe.
16   BY MR. NISENBAUM:  Q.  At the conclusion of you
17   attending to him, was he still breathing?
18        A.   When the paramedics showed up?
19        Q.   Yes.
20        A.   I don't believe so.  I believe he was still
21   going in and out, but had gone out.
22        Q.   And was it about five minutes when the
23   paramedics showed up?
24        A.   Yeah.  I would say roughly about that.
25        Q.   That's about the time that you stopped
```

18

```
 1    wearing.
 2         Q.   Was it basically a flannel shirt?
 3         A.   Yes.
 4         Q.   Now, you went -- you went with the
 5    paramedics --
 6         A.   I did.
 7         Q.   -- with Mr. Gonsalez -- let me finish the
 8    question.  It's okay.  It will happen again.  I'll start
 9    the question over.
10              Mr. Gonsalez was transported to the hospital,
11    correct?
12         A.   Yes.
13         Q.   And you attended Mr. Gonsalez or you were with
14    Mr. Gonsalez while he was in the ambulance being
15    transported to the hospital, correct?
16         A.   Yes.
17         Q.   At that time -- well, I guess what I'm
18    somewhat curious about, you wrote in your report during
19    transport, this is Bates 19, "Gonsalez was incoherent
20    and was unable to answer any questions."  What did you
21    mean by incoherent?
22         A.   That he seemed dazed.  And when the paramedics
23    were talking to him he wasn't responding to them.
24         Q.   Okay.  It wasn't like he was babbling?
25         A.   No.
```

22

```
 1                    DECLARATION OF WITNESS
 2
 3           I hereby declare I am the deponent in the
 4    within matter; that I have read the foregoing deposition
 5    and know the contents thereof, and I declare that the
 6    same is true of my knowledge except as to the matters
 7    which are therein stated upon my information or belief,
 8    and as to those matters, I believe them to be true.
 9           I declare under the penalties of perjury of the
10    State of California that the foregoing is true and
11    correct.
12
13           Executed this _____ day of _____,
14    20__, at _____, _____.
                        (City)                  (State)
15
16
                       _____
17                     JASON GILLETT
18
19
20
21
22
23
24
25
                                                            34
```

**DEPOSITION OF OFFICER JASON GILLETT**

```
 1    STATE OF CALIFORNIA    )
 2                           )  ss.
 3    COUNTY OF ALAMEDA      )
 4
 5            I hereby certify that the witness, Jason
      Gillett, in the foregoing deposition appeared before me,
 6    Kelly McKissack, a Certified Shorthand Reporter and
      a disinterested person.
 7
              Said witness was then and there at the time
 8    and place previously stated by me placed under oath to
      tell the truth, the whole truth and nothing but the
 9    truth in the testimony given on the date of the within
      deposition; that the deposition is a true record of the
10    witness' testimony as reported by me.
11            The testimony of the witness and all questions
      and remarks requested by Counsel was reported under my
12    direction and control, caused to be transcribed into
      typewritten form by means of Computer-Aided
13    Transcription.
14            I am a Certified Shorthand Reporter licensed
      by the State of California, and I further certify that I
15    am not interested in the outcome of the said action, nor
      connected with, nor related to any of the parties in
16    said action, nor to their respective counsel.  I am not
      of counsel or attorney for either or any of the parties
17    to the case named in the within caption.
18            IN WITNESS WHEREOF, I have hereunto affixed my
      signature this 13th day of February, 2020
19
20

21    __/s/Kelly McKissack_____
22    Kelly McKissack
      Certified Shorthand Reporter
23    California License No. 13430
24
25                              --oOo--
```

35

DEPOSITION OF OFFICER JASON GILLETT

```
1                        WITNESS LETTER

2    TO:  Officer Jason Gillett              Date: 03.06.20
          c/o Michael G. Vigilia, Sr. Asst. City Attorney
3         CITY OF HAYWARD                    Depo: 01.30.20
          777 B Street                       Ref. #20013005A
4         Hayward, CA  94541

5    RE: AG.G...J.Aquino; K.Gonsalez v. City of Hayward, et al.

6    Dear Officer Gillett:

7         Please be advised that the transcript of your
     deposition taken in the above matter has been completed
8    and is now available at this office for your reading and
     signing.
9         Please contact our office between the hours of 9:30
     a.m. and 5:00 p.m. Monday-Friday, to schedule an
10   appointment.  Or, if you prefer, contact the attorney to
     review and sign the copy of your deposition under penalty
11   of perjury.
          Read the transcript making any changes necessary.
12   In making any changes, please use the following guide:
          1. DO NOT WRITE on the original transcript.
13        2. SIGN UNDER PENALTY OF PERJURY at the end of the
             Deposition on the Certificate of Witness Page.
14        3. List each change on the Deposition Errata Sheet
             following this page. Signature is required at
15           the bottom of the Errata Sheet.
          4. Forward the signed Certificate of Witness Page
16           and signed Errata Sheet in addition to a copy of
             this letter to:
17                Barbara J. Butler & Associates
                  Certified Court Reporters
18                P.O. Box 3508, Santa Clara, CA  95055
                  (510) 832-8853 or (408) 248-2885.
19        Upon receipt of items requested in this letter, I
     will forward copies of same to all Counsel.
20        In the event you have not reviewed you deposition
     within 35 days or by trial date, whichever is sooner, the
21   original transcript will be sealed pursuant to applicable
     laws and thereafter mailed to the deposing attorney.
22
                             Sincerely,
23
                             /s/Barbara J. Butler
24                           Barbara J. Butler, CSR

25   cc:  All Counsel
                                                           36
```